UNITED STATES DISTRICT COURT,
DISTRICT OF NEW JERSEY
---------------------------------------------------------X
JUAN FERNANDEZ,

               Plaintiff,                          18-CV- 2354

v.

                                            **COMPLAINT**

TROY CORPORATION, WILLIAM BRIAN      **REQUEST FOR JURY TRIAL**
SMITH, individually and DAVID FAHERTY,
individually,

               Defendants.
---------------------------------------------------------X

      Plaintiff, Juan Fernandez (hereinafter "Plaintiff" or "Fernandez") by his attorneys, Deutsch Atkins, P.C., hereby alleges Defendants Troy Corporation (hereinafter "Troy"), William Brian Smith (hereinafter "Smith"), and David Faherty (hereinafter "Flaherty") (jointly hereinafter referred to as "Defendants") engaged in unlawful employment discrimination as follows:

## PARTIES

1. Plaintiff, Fernandez, is an individual of approximately sixty-seven (67) years of age with a primary residence at 7526 S. W. 111th Place, Miami Florida 33173 and was an employee of Troy as that term is defined in the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (hereinafter the "ADEA"); the Americans with Disabilities Act of 1990, as amended, 42 U.S.C § 12101 *et seq.* (hereinafter "ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* (hereinafter "NJLAD").

2. Troy is a corporation selling preservatives, performance additives, and metal carboxylates worldwide with a principal place of business located at 8 Vreeland Road, Florham Park, New Jersey 07932.

3. Troy was Plaintiff's employer as that term is defined in the ADEA, ADA and NJLAD.

4. At all times relevant to this action, Troy maintained in excess of fifteen (15) employees.

5. At all times relevant to this action, Smith was the Vice President and General Manager – Operations, Americas and Europe for Troy.

6. At all times relevant to this action, Faherty was the Vice President and General Manager – Americas for Troy.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)&(c).

8. This Court has supplemental jurisdiction over Plaintiff's NJLAD claims pursuant to 28 U.S.C. § 1367.

## PROCEDURAL HISTORY

9. Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about February 7, 2017, Charge No. 524-2017-00443 (the "EEOC Charge"), alleging that Troy discriminated against Plaintiff on the basis of his age and disability in violation of the ADEA and ADA.

10. The EEOC issued a Notice of Right to Sue dated November 11, 2017. A true and accurate copy of the right to sue letter is attached hereto as **Exhibit A**.

## FACTS COMMON TO ALL COUNTS

11. On or about September of 1992, Troy hired Fernandez as the Sales Manager for Latin America and the Caribbean.

12. Fernandez served as Troy's Sales Manager for Latin America and the Caribbean for approximately fourteen (14) years.

13. Initially Eric Bensaid, Vice President – International Sales, was Fernandez's direct supervisor.

14. Fernandez's job duties as Sales Manager for Latin America and the Caribbean included the appointment and/or replacement of distributors and the agents in conformance with business growth objectives. Fernandez also provided technical training for distributors and agents to enhance area technical support.

15. During Fernandez's employment as Sales Manager for Latin American and the Caribbean, Fernandez received at least satisfactory performance evaluations.

16. In many instances, Troy recognized Fernandez as demonstrating exemplary performance.

17. In his capacity as Sales Manager for Latin America and the Caribbean, Fernandez also received yearly merit salary increases and bonuses.

18. In or around 2005, Fernandez's then supervisor, Eric Bensaid, passed away and Fernandez began reporting to Faherty.

19. In or around 2006, Troy promoted Fernandez to Director for Latin America and the Caribbean.

20. As Director for Latin America and the Caribbean, Fernandez continued to report to Faherty.

21. Fernandez's job duties as Director for Latin America and the Caribbean consisted of establishing the strategic direction for the region.

22. As a result of Fernandez's outstanding performance, Troy's sales for Latin America and the Caribbean increased from less than $2,000,000.00 in annual sales of pollutant mercury based biocides to $15,000,000.00 in annual sales of mostly biodegradable biocides.

23. Troy's market share for the environmental biocides in Latin America and the Caribbean

jumped from zero (0) to thirty-five percent (35%).

24. This market share increase was greater than Troy's multinational competitors, most of which were larger than Troy.

25. During Fernandez's employment with Troy serving as its Director for Latin America and the Caribbean, Fernandez received satisfactory to superior yearly performance evaluations.

26. In his capacity as Director for Latin America and the Caribbean, Fernandez also received yearly merit salary increases and bonuses.

27. In further recognition of Fernandez's outstanding contributions, Troy awarded Fernandez the Gold Standards Sales Award for 2010 and 2014.

28. In or around 2011, Troy's CEO and owner, Daryl Smith, hired his two (2) sons, Christopher Smith and William Brian Smith.

29. In or around 2011 Christopher Smith and Defendant Smith, were both in their thirties.

30. In or around 2014, Faherty, Fernandez's direct supervisor, began reporting to Smith.

31. In early 2015, Troy removed from Fernandez the Mexico market.

32. Troy did not provide Fernandez with any rationale, business or otherwise concerning its decision to remove from Fernandez the Mexico territory.

33. Mexico was Troy's largest Latin American market.

34. Troy assigned the Mexico territory to an individual who was approximately forty (40) years of age, was less qualified and had less experience than Fernandez.

35. In or around this time, Defendant Smith commented that he was "renewing the Company blood" and creating a "new Troy."

36. In October 2015, without any significant change in Fernandez's performance, Fernandez received the worst employment evaluation of his twenty-four (24) year tenure with Troy.

4

37. Moreover, the October 2015 performance evaluation was the worst review he had received in the entirety of his forty (40) year professional career.

38. In November of 2015, Troy placed Fernandez on a performance improvement plan.

39. In the performance improvement plan, Troy demanded Fernandez achieve sales quotas well in excess of an amount possible for the region.

40. Troy inflated Fernandez's sales quota to fabricate a pretext upon which to terminate Fernandez due to his age.

41. In February of 2016, Chance on behalf of Troy, again provided Fernandez with the memorandum identifying the unachievable sales quota.

42. Chance further advised Fernandez that Troy was likely to terminate his employment due to under performance and that the quotas were consistent with the "new Troy."

43. On or about March 2, 2016, Fernandez sent an email to Defendants Faherty and Chance explaining why the quota could not be achieved.

44. On or about May 27, 2016, Faherty emailed Fernandez advising that Fernandez was not on target to meet the quotas as per the performance improvement plan.

45. On or about July 23, 2016, Fernandez, while vacationing with his family, began experiencing severe headaches.

46. On or about July 29, 2016 and with his symptoms worsening, Fernandez went to the emergency room where he was diagnosed with a subdural hematoma.

47. The subdural hematoma required surgery and on or about July 30, 2016, Fernandez underwent an emergency craniotomy.

48. On or about August 6, 2016, Fernandez underwent a second emergency craniotomy.

49. On or about August 17, 2016, Fernandez met with his healthcare provider who advised

that he was progressing well, but additional tests were required.

50. Because Fernandez feared Troy would terminate his employment, Fernandez requested his healthcare provider release him to return to work as soon as possible.

51. Fernandez's healthcare provider complied and authorized Fernandez to return to work on August 22, 2016 with accommodations, i.e. no air travel and no driving for extended periods.

52. Immediately upon his receipt of this information, Fernandez communicated to Troy his expected return to work date of August 22, 2016 and the accommodations.

53. The next day, August 18, 2016, Faherty requested Fernandez meet with him on August 19, 2016, to discuss the Latin America Strategies for the remainder of the calendar year.

54. On August 19, 2016, Fernandez reported to the Miami office to meet with Faherty. When Fernandez arrived, both Faherty and Chance were present.

55. At this August 19, 2016 meeting, only days after Fernandez's emergency craniotomies, Faherty and Chance terminated Fernandez's employment.

56. Troy asserted the termination was due to Fernandez's "under performance."

57. Based on information and belief, Troy replaced Fernandez with someone who is younger, less qualified and less experienced.

## COUNT ONE
### (Age Discrimination in Violation of the ADEA and NJLAD)

58. Plaintiff repeats and realleges Paragraphs 1 through 57 of the Complaint as if fully set forth herein.

59. Fernandez was over forty (40) years of age at the time of the discriminatory conduct.

60. Fernandez performed the duties and responsibilities of his position in at least a satisfactory manner.

61. In many instances Troy recognized Fernandez for exemplary performance.

6

62. Fernandez suffered an adverse employment action when Defendants terminated his employment due to his age.

63. Defendants replaced Fernandez, in part, when Defendants assigned the Mexico territory to a younger, less qualified and less experienced individual.

64. Defendants replaced Fernandez with someone who is younger, less qualified and less experienced.

65. By and through the actions described herein, Defendants discriminated against Fernandez on the basis of age in violation of the ADEA and NJLAD.

66. A determinative and/or motivating factor for Defendants' decision to terminate Fernandez's employment was Fernandez's age.

67. As a result of the Defendants' discrimination against Fernandez on account of his age, Fernandez has suffered, and will continue to suffer, economic losses, including but not limited to salary, bonus, and other employment benefits.

68. As a result of Defendants' discrimination against Fernandez on account of his age, Fernandez has suffered, and will continue to suffer emotional and psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career.

69. The conduct set forth herein involved Troy's upper management and was egregious, willful, wanton, and in reckless disregard for Fernandez's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Troy and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay) and other lost employment benefits;

(b) Compensatory damages for emotional distress, including but not limited to

7

psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career;

(c) Punitive damages;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e) Such other relief as this Court may deem just and appropriate.

## COUNT TWO
### (Disability Discrimination in Violation of the ADA and NJLAD)

70. Plaintiff repeats and realleges Paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71. Fernandez had a "disability" as that term is defined in the ADA and NJLAD.

72. By and through the conduct described herein, Defendants discriminated against Fernandez on the basis of his disability in violation of the ADA and NJLAD.

73. As a result of the Defendants' discriminatory conduct against Fernandez on account of his disability, Fernandez has suffered, and will continue to suffer, economic losses, including but not limited to salary, bonuses, and other employment benefits.

74. As a result of Defendants' discrimination against Fernandez on account of his disability, Fernandez has suffered, and will continue to suffer emotional and psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career.

75. The conduct set forth herein involved Troy's upper management and was egregious, willful, wanton, and in reckless disregard for Fernandez's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Troy and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay) and other lost employment benefits;

(b) Compensatory damages for emotional distress, including but not limited to psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career;

(c) Punitive damages;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e) Such other relief as this Court may deem just and appropriate.

### COUNT THREE
### (Failure to Accommodate in Violation of the ADA and NJLAD)

76. Plaintiff repeats and realleges Paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77. Fernandez had a "disability" as that term is defined in the ADA and NJLAD.

78. Defendants were aware of Fernandez's disability and refused to provide reasonable accommodation(s) to Fernandez without any legitimate business justification.

79. By and through the conduct described herein, Defendants refused to provide reasonable accommodation(s) to Fernandez in violation of the ADA and NJLAD.

80. As a result of the Defendants' failure to provide reasonable accommodation(s) to Fernandez, Fernandez has suffered, and will continue to suffer, economic losses, including but not limited to salary, bonuses, and other employment benefits.

81. As a result of the Defendants' failure to provide a reasonable accommodation to Fernandez, Fernandez has suffered, and will continue to suffer emotional and psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career.

82. The conduct set forth herein involved Troy's upper management and was egregious, willful, wanton, and in reckless disregard for Fernandez's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Troy and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay) and other lost employment benefits;

(b) Compensatory damages for emotional distress, including but not limited to psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career;

(c) Punitive damages;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e) Such other relief as this Court may deem just and appropriate.

## COUNT FOUR
### (Aiding and Abetting Discrimination in Violation of the NJLAD)

83. Plaintiff repeats and realleges Paragraphs 1 through 82 of the Complaint as if fully set forth herein.

84. Including but not limited to the conduct described herein, Faherty and Smith, aided and abetted discrimination in violation of the NJLAD.

85. As a result of Faherty and Smith, aiding and abetting discrimination in violation of the NJLAD, Fernandez has suffered and will continue to suffer economic losses, including but not limited to salary, bonuses and other employment benefits.

86. As a result of the Faherty and Smith aiding and abetting discrimination in violation of the NJLAD, Fernandez has suffered, and will continue to suffer emotional and psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career.

87. The conduct set forth herein involved Troy's upper management, including but not limited to Faherty and Smith, and was egregious, willful, wanton, and in reckless disregard for Fernandez's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Faherty and Smith, jointly and severally, and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay) and other lost employment benefits;

(b) Compensatory damages for emotional distress, including but not limited to psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career;

(c) Punitive damages;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e) Such other relief as this Court may deem just and appropriate.

**DEUTSCH ATKINS, P.C.**
*Attorneys for Plaintiff, Juan Fernandez*
25 Main Street, Suite 104
Court Plaza North
Hackensack, New Jersey 07601
Telephone: (201) 498-0900
Facsimile: (201) 498-0909

By: /s/ Michael Malatino
MICHAEL MALATINO

Dated: February 20, 2018

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

                                                  **DEUTSCH ATKINS, P.C.**
                                                  *Attorneys for Plaintiff, Juan Fernandez*
                                                  25 Main Street, Suite 104
                                                  Court Plaza North
                                                  Hackensack, New Jersey 07601
                                                  Telephone: (201) 498-0900
                                                  Facsimile: (201) 498-0909

                                                  By: /s/ Michael Malatino
                                                        MICHAEL MALATINO

Dated: February 20, 2018


## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Adam J. Kleinfeldt, Esq. and Michael Malatino, Esq. as trial counsel.

                                                  **DEUTSCH ATKINS, P.C.**
                                                  *Attorneys for Plaintiff, Juan Fernandez*
                                                  25 Main Street, Suite 104
                                                  Court Plaza North
                                                  Hackensack, New Jersey 07601
                                                  Telephone: (201) 498-0900
                                                  Facsimile: (201) 498-0909

                                                  By: /s/ Michael Malatino
                                                        MICHAEL MALATINO

Dated: February 20, 2018

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

It is hereby certified that as of the date hereof, the matter in controversy is not the subject of any other litigation, arbitration, or administrative proceeding currently pending in any court or before any other body.

**DEUTSCH ATKINS, P.C.**
*Attorneys for Plaintiff, Juan Fernandez*
25 Main Street, Suite 104
Court Plaza North
Hackensack, New Jersey 07601
Telephone: (201) 498-0900
Facsimile: (201) 498-0909

By: /s/ Michael Malatino
MICHAEL MALATINO

Dated: February 20, 2018